UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, | Civil Action No. 18-17210 (KM) (MAH) |
| Plaintiff, | |
| v. | OPINION |
| PCS WIRELESS WAREHOUSE, INC., and PCS WIRELESS, LLC, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court by way of Defendant PCS Wireless, LLC's ("PCS") Motion for Leave to File a Third-Party Complaint. The Court decided this motion without oral argument. *See* Fed. R. Civ. P. 78. For the reasons that follow, the Court will grant PCS's Motion.

## II. BACKGROUND

This is an insurance coverage action pertaining to the applicability of a policy deductible for a claim of stolen pallets of cell phones valued at $502,500. *See* Compl. ¶¶ 7-26, Dec. 14, 2018, D.E. 1. Plaintiff XL Specialty Insurance Company insures Defendants PCS Wireless Warehouse, Inc. and PCS under an Ocean Cargo Policy (the "XL Policy").[1] *Id.* ¶ 7. In addition to a "Transit Deductible" equal to $25,000 for theft or non-delivery claims in excess of $100,000, the XL Policy contains an "Annual Aggregate Deductible" in the amount of $500,000 for all theft and non-delivery claims. *See id.* ¶¶ 9-12.

---

[1] Plaintiff has dismissed its claims against Defendant PCS Wireless Warehouse, Inc. without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Notice of Dismissal & Stip., Feb. 20, 2019, D.E. 5.

1

PCS, through its broker Integrity Insurance Brokerage ("Integrity"), filed an insurance claim pertaining to the cell phones believed to be stolen during transit (the "Claim"). *Id.* ¶¶ 18, 20. On March 29, 2018, Plaintiff paid out $480,250 to settle the Claim. *Id.* ¶ 22. On April 10, 2018, Plaintiff requested that PCS return the payment based on Plaintiff's misapplication of the relevant deductibles. *Id.* ¶ 23. Specifically, Plaintiff failed to consider PCS's failure to satisfy certain warranties that, if breached, would cause the Transit Deductible to be tripled; and failed to apply the Annual Aggregate Deductible to the Claim. *See id.* ¶¶ 21, 23. On that date, an Integrity employee contested Plaintiff's interpretation of the Annual Aggregate Deductible. *See* Proposed Third-Party Compl. ¶¶ 27-29, 31, Nov. 25, 2019, D.E. 28-4. The employee stated that Plaintiff's interpretation of the XL Policy "was news to me" and that she would never have accepted the Annual Aggregate Deductible in procuring insurance for PCS based on Plaintiff's position. *See id.* ¶¶ 28, 31. PCS refused to return the $480,250, which prompted the filing of this action on December 18, 2018. *See id.* ¶¶ 24-51.

The parties appeared before the Court for an initial scheduling conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on June 4, 2019, at which time the Court entered a Pretrial Scheduling Order. *See* Am. Pretrial Scheduling Order, June 6, 2019, D.E. 11. In anticipation of the next scheduled status conference, Plaintiff submitted to the Court a proposed Second Amended Pretrial Scheduling Order that extended certain deadlines. *See* Pl.'s Letter, Sept. 16, 2019, D.E. 20. The Court executed the parties' proposed form of Order, which extended the deadline to file any motion to add new parties or amend pleadings to November 25, 2019. *See* Second Am. Scheduling Order, Sept. 18, 2019, D.E. 20. The Court later executed the parties' proposed Third Amended Scheduling Order, ordering, *inter alia*, that the parties shall serve their responses to requests for production of documents on or before November 15, 2019. *See* Third

Am. Scheduling Order, Oct. 31, 2019, D.E. 27. The Court also extended the fact discovery deadline to February 14, 2020. *See id.*

On November 25, 2019, PCS moved for leave to file a third-party complaint against Integrity and Program Brokerage Corp. ("PBC") (collectively, the "Brokers"). *See* PCS's Mot. for Leave to File Third-Party Compl., D.E 28. As set forth in the proposed Third-Party Complaint, Integrity has served as PCS's broker of record since June 27, 2013, and PBC has served as the wholesale broker since at least 2011. *See* Proposed Third-Party Compl. ¶¶ 9-10. Language regarding an "annual aggregate" amount for the deductible was first included in the policy after the 2014 policy renewal. *Id.* ¶¶ 12-13. PCS alleges that the Brokers did not adequately describe the change in the deductible to PCS at that time, or following any subsequent policy renewals. *Id.* ¶¶ 14-17. The Annual Aggregate Deductible was first included in the 2017 XL Policy, which covers the subject loss. *Id.* ¶ 18. According to PCS, neither the Brokers nor the XL Policy itself explained how the Annual Aggregate Deductible was to apply. *Id.* ¶¶ 19-21.

After Plaintiff backpedaled on the payment to settle the Claim, it became apparent that the parties and the Brokers may have had divergent interpretations of the Annual Aggregate Deductible. *See id.* ¶¶ 26-31. PCS asserts that if Plaintiff's interpretation of the Annual Aggregate Deductible is deemed to be correct, then PBC was negligent in explaining the import of the provision to Integrity and, in turn, Integrity was negligent in failing to adequately explain same to PCS. *Id.* ¶¶ 32-33. Accordingly, PCS seeks to bring a professional negligence claim against the Brokers premised on their failure to procure adequate insurance for PCS. *See id.* ¶¶ 34-41. By way of relief, PCS seeks a judgment against the Brokers in the amount of any judgment entered in Plaintiff's favor and against PCS, plus PCS's defense costs. *See id.* ¶ 36, Prayer for Relief.

3

Plaintiff has opposed PCS's Motion for Leave to File a Third-Party Complaint on the grounds that PCS's motion is untimely, that impleader will complicate the issues at trial, and that impleader will cause substantial prejudice to Plaintiff. *See* Pl.'s Br. in Opp. to Mot. for Leave to File Third Am. Compl. at 5-16, Dec. 23, 2019, D.E. 30. While this motion was pending, PCS, with the consent of Plaintiff, requested a further extension of the fact discovery deadline. *See* Letter, Feb. 11, 2020, D.E. 32. PCS noted that the parties "had been holding the fact depositions in abeyance" pending a ruling on this motion "in an effort to avoid having to re-depose the witnesses once the brokers got into the case." *Id.* The Court granted PCS's request and extended the fact discovery deadline from February 14, 2020, to April 3, 2020. *See* Fourth Am. Scheduling Order, Feb. 11, 2020, D.E. 33.

### III. ANALYSIS

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1); *see also Chao v. N.J. Licensed Beverage Ass'n, Inc.*, 461 F. Supp. 2d 303, 306 (D.N.J. 2006) ("[A] third-party claim under Rule 14 can be maintained only if the liability asserted is in some way derivative of the main claim." (citation omitted)). "The purpose of Rule 14 'is to avoid circuity of action and multiplicity of litigation,' and 'permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all parties in one suit.'" *LM Ins. Co. v. All-Ply Roofing Co., Inc.*, No. 14-4723, 2017 WL 1136669, at *2 (D.N.J. Mar. 27, 2017) (first quoting *Spencer v. Cannon Equip. Co.*, No. 07-2437, 2009 WL 1883929, at *4 (D.N.J. June 29, 2009); then quoting *Hitachi Capital Am. Corp. v. Nussbaum Sales Corp.*, No. 09-731, 2010 WL 1379804, at *7 (D.N.J. Mar. 10, 2010)).

If the third-party complaint is not filed within fourteen days of the defendant's answer, the defendant may only implead a third party with leave of the Court. Fed. R. Civ. P. 14(a)(1). "[T]he decision to permit joinder rests with the sound discretion of the trial court." *Spencer*, 2009 WL 1883929, at *4 (quoting *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 748 F. Supp. 1057, 1068 (D. Del. 1990)). Just like a motion to amend pursuant to Rule 15(a)(2), the standard is a lenient one: "Leave to amend pleadings is liberally granted when justice so requires." *Ryan v. Collucio*, 183 F.R.D. 420, 423 (D.N.J. 1998); *see also Napolitano v. Haven Homes Inc.*, No. 10-1712, 2012 WL 253175, at *4 (D.N.J. Jan. 26, 2012) ("Motions to file Third Party Complaints under Rule 14 are essentially motions to amend the pleadings . . . ."). "Courts have considered the following factors in exercising the discretion to implead parties: '(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of the issues at trial; (4) prejudice to the original plaintiff.'" *LM Ins. Co.*, 2017 WL 1136669, at *2 (quoting *Spencer*, 2009 WL 1883929, at *2); *accord Ronson v. Talesnick*, 33 F. Supp. 2d 347, 356 (D.N.J. 1999).

The Court first addresses timeliness of the motion. A district court may deny leave to amend when there is undue delay, such as "when the movant delays completion of discovery" or "when adding a new claim 'would fundamentally alter[] the proceeding and could have been asserted earlier.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115-16 (3d Cir. 2019) (alteration in original) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 274 (3d Cir. 2001)). "Undue delay is 'protracted and unjustified'—it 'can place a burden on the court or counterparty' or show 'a lack of diligence sufficient to justify a discretionary denial of leave.'" *Id.* at 115 (quoting *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017)). The inquiry "focus[es] on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273; *see also Spencer*, 2009 WL 1883929, at *3 (stating that the denial of the Rule 14(a) motion based on undue

delay and prejudice "should be tethered to the failure of the movant to act with reasonable diligence in bringing the motion and the plaintiff's specific injury as a result of an unreasonable delay").

The Court first notes that PCS complied with the Court's deadline to file this motion. *See* Second Am. Scheduling Order ¶ 12, D.E. 20 ("Any motion to add new parties . . . *whether by amended or third-party complaint*, must be filed no later than November 25, 2019." (emphasis added)). The Court is hesitant to find "undue delay" when the parties were on notice that a third-party complaint may have been forthcoming. *See Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2017 WL 4404567 (D.N.J. Oct. 4, 2017) ("[P]laintiff's timeliness in seeking leave, within the deadline for amending pleadings proposed by the parties . . . and set by the Court pursuant to Rule 16, seems incongruous with [defendant's] argument that plaintiffs delayed in filing this motion."); *Astrazeneca AB v. Perrigo Co. PLC*, No. 15-1057, 2015 WL 8483298, at *4 (D.N.J. Dec. 8, 2015) ("The Court would find it difficult to hold that a motion filed within the deadline set by the Court and known to the parties was the product of undue delay."); *but see Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 WL 1321605, at *4 (D.N.J. Apr. 4, 2011) ("[F]iling a motion to amend within the time allowed in an applicable scheduling order does not necessarily mean the motion is not unduly delayed; it simply means that the party does not need to meet Rule 16's higher, 'good cause' standard.").

Plaintiff avers that PCS's filing of this motion on the final day permitted by the Third Amended Scheduling Order is nonetheless untimely because PCS "had all information necessary to bring the proposed claims against the Brokers before this lawsuit was even filed." Pl.'s Opp. Br. at 6. Plaintiff emphasizes that the proposed Third-Party Complaint relies on an April 2018 email exchange involving an Integrity employee wherein the Integrity employee disputes Plaintiff's interpretation of the Annual Aggregate Deductible. *See id.* at 6-7 (citing Proposed Third

6

Am. Compl. ¶¶ 27-33). PCS attempts to explain its delay by noting that it did not implead the Brokers until it had the opportunity to review documents produced from Plaintiff in discovery and from the Brokers via third-party subpoenas. *See* PCS's Reply Br. at 1-2, Jan. 8, 2020, D.E. 31. According to PCS, "[w]hen Plaintiff's immense, recent document production, Integrity's production, and PCS's own large document production are combined, these facts do not tell a story of undue delay, but rather one of reasonable and methodical litigating . . . ." *Id.* at 2.

The Court cannot draw a conclusion in favor of either party. On one hand, this is not a case where the identity of the Brokers and their role in this matter were revealed or fleshed out during discovery. Indeed, PCS became privy to Integrity's contrary interpretation of the Annual Aggregate Deductible shortly after Plaintiff demanded the refund of the insurance proceeds— months before Plaintiff filed this lawsuit. *See* Proposed Third Part Compl. ¶¶ 26-31; Pl.'s Opp. Br., Ex. A, D.E. 30-1.[2] Although PCS may have received a substantial amount of discovery from Plaintiff and the Brokers, PCS does not clarify whether that discovery revealed any evidence that was a necessary prerequisite to the filing of its claims against the Brokers, or somehow clarified facts essential to the proposed pleading that were not already evident to PCS.

On the other hand, PCS's decision to implead the Brokers five months after the initial scheduling conference does not significantly disrupt the parties' progress through discovery. *See Bus. Store, Inc. v. Mail Boxes Etc.*, No. 11-3662, 2012 WL 3962235, at *3 (D.N.J. Sept. 7, 2012) (finding that motion was timely, notwithstanding the prior knowledge of the third-party defendants' potential liability and the expiration of the deadline to file any motion to amend,

---

[2] The Court considers the emails contained in Exhibit A to Plaintiff's opposition brief because PCS "explicitly relied upon" them in drafting the Proposed Third-Party Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that a district court may consider documents extraneous to the pleadings on a motion to dismiss where the plaintiff relied on the documents in drafting the complaint).

7

because the motion "was not filed so far beyond the deadline to cause significant disruption in the flow of the litigation"). Discovery did not get underway until at least June 2019 when the parties came before the Court for the initial scheduling conference pursuant to Rule 16 of the Federal Rules of Civil Procedure. *See* Am. Pretrial Scheduling Order, D.E. 11. Furthermore, the parties did not begin producing documents until at least October 2019. *See* Second Am. Scheduling Order ¶ 3, D.E. 20. This motion followed soon thereafter. Although PCS was aware of the Brokers' potential negligence from the outset of this litigation, this case is a far cry from those where the motion to amend came years into litigation or was preceded by prior motions to amend. *See, e.g.*, *LM Ins. Co.*, 2017 WL 1136669, at *2 (noting that the movant identified the putative third-party defendant in its answer filed two years prior to the subject motion, that the movant previously filed a motion to file a third-party complaint against a different third-party defendant, and that the putative third-party defendant was frequently mentioned in depositions); *Ford Motor Co.*, 2011 WL 1321605, at *4 (denying motion to amend filed in June 2010 as untimely where the movant "received the relevant documents in June 2006 [and] there have been numerous opportunities to add [the party] as a third-party defendant, such as when [the movant] filed an earlier motion to amend its complaint in February 2008"). The timeliness factor thus weighs neutrally.

As for the remaining factors, Plaintiff submits that the issues at trial will be complicated if PCS is permitted to implead the Brokers because "the Brokers' alleged negligence is separate and distinct from, and far broader than, the narrow issues of contract interpretation in [Plaintiff's] claim." Pl.'s Opp. Br. at 8. Plaintiff also stresses that PCS's claims against the Brokers are contingent on Plaintiff prevailing on its claims against PCS, which "will only confuse the issues for trial and overly complicate the matter." *Id.* at 9. Finally, Plaintiff contends that it will suffer prejudice if leave to file the Third-Party Complaint is granted because the inclusion of the claim

against the Brokers may cause Plaintiff to expend additional resources and may delay the resolution of claims against PCS. *See id.* at 10-12.

The Court is unpersuaded by the foregoing and concludes that the remaining factors weigh in favor of granting PCS leave to implead the Brokers. It is well-recognized that in most, if not all, cases involving impleaded parties, the movant's claims against the third-party defendant might delay resolution of the matter and increase the complexity of the trial. *See Hitachi*, 2010 WL 1379804, at *5-6 (noting that "[d]elay is expected with the majority of Rule 14 motions" and that "[i]t is expected that impleading a third party will add some level of complexity to the trial"); *Spencer*, 2009 WL 1883929, at *4 ("[D]elay is inevitable in most if not all Rule 14 situations, since new claims and parties will increase the time to prepare for trial and the trial complexity, too."). Accordingly, "[i]f the inevitable delay and complexity were dispositive considerations, . . . few Rule 14(a) motions would be granted." *Mechin v. Carquest Corp.*, No. 07-5824, 2010 WL 3259808, at *5 (D.N.J. Aug. 17, 2010) (quoting *Spencer*, 2009 WL 1883929, at *4); *see also Formosa Plastics Corp., U.S.A. v. Ace Am. Ins. Co.*, 259 F.R.D. 95, 99 (D.N.J. 2009) (noting that "[w]hile adding [an additional insurer as a defendant in a coverage action] may make the issues more complex, the Court is well-equipped to navigate the issues and assist a jury in doing so").

"Such considerations must be weighed against the alternative prospect of two separate trials and the need for attempting to coordinate, and in the end possibly consolidate, the matter for the sake of judicial economy." *Mechin*, 2010 WL 3259808, at *5 (quoting *Spencer*, 2009 WL 1883929, at *4); *see also Hitachi*, 2010 WL 1379804, at *6 (finding that "the introduction of complexity in the current action, although likely to some extent, does not supersede concern for consolidating this matter for the sake of judicial economy"); *Hawkins v. Waynesburg Coll.*, No. 07–5, 2007 WL 2119223, at *4 (W.D. Pa. July 20, 2007) ("Superimposed upon these factors are

the overarching principles that Rule 14 is [intended] to reduce multiplicity of litigation, and it therefore is entitled to liberal construction.").

A unitary proceeding is the proper result here. It is true that PCS's professional malpractice claim will expand this case beyond what the original claim—a straightforward, two-party insurance coverage dispute. The professional malpractice claim will likely engender additional discovery and different experts. While in certain cases those considerations may warrant denial of the motion in favor of a separate action against the Brokers, the posture of the present case militates against denial. PCS has already received documents from the Brokers pursuant to third-party subpoenas, which suggests that document discovery in the third-party action will not be starting from scratch. *See* PCS's Reply Br. at 2. Moreover, the parties had yet to take any depositions at the time the instant motion was filed, and have agreed to hold depositions in abeyance pending the resolution of this motion. *See* Letter, Feb. 11, 2020, D.E. 32. Given the common questions across the main action and third-party action regarding the parties' respective understandings of the Aggregate Annual Deductible, it is eminently reasonable for the parties to proceed through depositions only once. As for Plaintiff's concerns regarding the complexity of a putative trial, the Court can revisit those concerns, if they persist, on a motion to sever or separately try the third-party claim pursuant to Rule 14(a)(4).

Finally, the Court concludes that Plaintiff's prejudice arguments fall flat. Plaintiff does not articulate how PCS's prosecution of a malpractice claim against the Brokers will cause them to incur additional discovery costs. *See Spencer*, 2009 WL 1883929, at *3 (emphasizing that finding of prejudice "should be tethered to . . . the plaintiff's specific injury as a result of an unreasonable delay"). Indeed, Plaintiff notes that it does not contemplate any expert discovery on its claims against PCS and that it will seek leave to move for summary judgment at the close of the fact

discovery. *See* Pl.'s Opp. Br. at 10-11. Accordingly, the Court finds that on balance, the factors under Rule 14 weigh decidedly in favor of granting Plaintiff's motion, and that there is good cause to grant the motion.

## IV. CONCLUSION

For the reasons stated herein, PCS's Motion for Leave to File a Third-Party Complaint is granted. An appropriate order will follow.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: February 28, 2020